(Decided 19th June, 1879.)

---

THE FIRST NATIONAL BANK OF HAGERSTOWN, Garnishee of JOHN D. NEWCOMER *vs.* SUSAN WECKLER. THE FIRST NATIONAL BANK OF HAGERSTOWN, Garnishee of JOHN D. NEWCOMER *vs.* SUSAN WECKLER. SUSAN WECKLER *vs.* THE FIRST NATIONAL BANK OF HAGERSTOWN, Garnishee of JOHN D. NEWCOMER.

*Attachment on Judgment—Clerical error—Amendment of writ by order of Court—Nul tiel record—Practice in Court of Appeals—When clause of Scire Facias in writ of Attachment and notice to defendant in the Judgment, unnecessary—When an Appeal will not lie—Construction of the Act of 1874, ch. 45, relating to Attachments—Employer as garnishee—What does not constitute a variance.*

The recital in an attachment on judgment issued out of the same Court in which the judgment was recovered and remained of record, that the judgment had been recovered at a Court begun and held on the second Monday of *March* instead of the second Monday of *February*, is a mere clerical error which it is the duty of the Court to correct by ordering the writ to be amended.

If a party intend to have the decision of the Court below on a plea of *nul tiel record*, reviewed in the Court of Appeals, he must tender a bill of exceptions setting forth the record offered in evidence under the plea, the ruling of the Court with respect to it, and the exception thereto.

First National Bank of Hagerstown, Garn. *vs.* Weckler.

When an attachment by way of execution is issued within three years from the date of the judgment, a clause of *scire facias* in the writ as to the defendant in the judgment, and notice to him are not necessary.

No appeal lies from a judgment refusing to quash an attachment.

Under the Act of 1874 ch. 45, if an employé contract a debt exceeding one hundred dollars, or has a judgment recovered against him for more than that sum exclusive of costs, his creditor may issue an attachment upon it, and that attachment may be laid in the hands of his employer, and if his wages or salary due at the time or that may accrue due before the trial, are in excess of one hundred dollars, then *such excess* shall be affected by the attachment, and shall be liable to condemnation. And if an employer as garnishee disregards such an attachment, and after it is laid in his hands and before trial, pays over the accruing wages or salary in excess of one hundred dollars to the employé, he does so at his peril.

The record of a judgment on which an attachment was issued, showed that the verdict was rendered at November Term, 1875, and that a motion for a new trial was immediately made before the judgment was entered on the verdict. This motion was not disposed of until the following February Term, when it was overruled and judgment on the verdict was then rendered. The writ of attachment recited that the judgment was recovered at the February Term. HELD:

That no judgment could properly have been rendered until the motion for a new trial had been disposed of, and there was consequently no variance between the writ of attachment and the judgment.

APPEALS from the Circuit Court for Washington County.

The cases are stated in the opinions of the Court.

The causes were argued before BARTOL, C. J., BOWIE, MILLER and ROBINSON, J., for the plaintiff, and submitted for the garnishee.

*Albert Small* and *George Schley* for the garnishee.

There is but the simple issue: Did the attachment, when laid in the hands of the garnishee, reach salary not then earned, and so not *in esse?*

An attachment on judgment as authorized by the Code, Art. 10, sec. 30, is in all its essential features a *fi. fa. First National Bank of Baltimore vs. Jaggers,* 31 *Md.,* 48, and cases there cited. So, independently of the statute, it cannot reach wages, or any other right or property not yet in existence.

The Code, Art. 10, sec. 36, providing that an attachment shall not affect wages or salary not actually due at the date of its issue or levy, does not, therefore, declare a new principle; but, inasmuch, as it is held under our attachment system that the writ reaches all property, rights and credits intermediate the issue of the writ and the time of trial, it recognizes the non-liability of wages not earned, and wages not due, and fixes a limitation for exemption of that actually due. The construction of this section, the Act of 1854, ch. 23, as amendatory of 1852, ch. 340, is given in *Moore, et al., Garn. vs. Heaney,* 14 *Md.,* 558.

Before this action, however, the Act of 1874, ch. 45, was passed, which, by sec. 1, "amends" and "re-enacts" sec. 36, of Art 10, of the Code.

The plaintiff's right of action then depends upon this Act. And this amendatory Act, without changing the intent, the scope or the operation of the law, enlarges the exemption, and the more effectually to secure this exemption, it expressly limits the *right to issue* an attachment to cases where the judgment is for an amount greater than the amount of the exemption, and that against wages actually due.

The intent of the law, as thus amended, is fully disclosed in *Keyser vs. Rice,* 47 *Md.,* 212, in which this Court says: "In the Code of Public General Laws, Art. 10, sec.

36, title ' Attachments,' it was enacted that no attachment should lie against the wages or hire of any laborer or employé not actually due at the time of the attachment, and the sum of ten dollars," &c. * * The Act of 1874, ch. 45, is but an assertion of the same power in the promotion of the same policy. By this latter Act, the 36th sec. of Art 10, of the Code is repealed, and in its place is the amendment extending the exemption to one hundred dollars.

" From considerations of public convenience, the Courts have long since decided, that attachments would not lie against the salaries of public or municipal officers, and the same principles enlarged, have determined the Legislature to exempt the wages of employés of private persons and corporations." (47 *Md.*, 213.)

The policy here indicated is made manifest in this, that unless wages were thus protected, it would be difficult, indeed almost impossible, for private persons or corporations to retain their employés; they would leave their employ as soon as they ascertained that their salary or wages could or would be impounded by an attachment issued.

There is no opportunity for the introduction of a strained construction of the Act, nor to invoke the great canons of interpretation. The simple provisions are—

1st. That no attachment *shall issue* to affect wages, "unless the debt or judgment * * shall * * exceed the sum of one hundred dollars." This provision follows, as well from the explicit language of the Act, as from the specific exemption of wages accrued due to that amount.

2nd. In cases in which attachments *may* issue—upon judgments in excess of one hundred dollars—*that amount of wages due shall always be exempted* from the effect of the attachment.

3rd. The writ can reach only such sums, in excess of one hundred dollars, as may at any time become due and remain unpaid in the hands of the garnishee, during the period intervening the levy and the trial.

The application of this Act to the case at bar is obvious.

The judgment being in·excess of one hundred dollars, the writ could properly issue. There being no lands, tenements, goods, chattels or credits of the defendant in the hands of the garnishee at the time of the levy, she so far took nothing by her writ.

There being, at no time between the levy and the day of trial, in the hands of the garnishee, a sum in excess of one hundred dollars of the salary of the defendant, there was nothing upon which the attachment could take effect.

*H. H. Keedy* for Mrs. Wecker, the plaintiff.

The main question in this appeal is the construction of the Act of 1874, chap. 45. This Act by its title repeals section 36 of Article 10 of the Code of Public Gen. Laws, and re-enacts the same with an amendment. The first section of the Act recites, that section 36 be, and is hereby, amended and re-enacted so that the same read as follows: Then follows the law as amended: "No attachments upon warrant, judgment upon two *non ests*, or upon original process, shall issue against, be levied on or affect the wages or hire of any laborer or employé not actually due at the date of such attachment in the hands of the employers, whether such employers be individuals or corporations, unless the debt or judgment upon which such attachment is issued, shall, exclusive of costs, exceed the sum of one hundred dollars." These words can have but one meaning. There is no ambiguity about them. They are plain. They may be transposed and changed in their order, and any grammatical construction given them, and any rule of interpretation applied, they will still mean that no attachment can affect wages not actually due at the date of the attachment, unless the debt or judgment upon which it issues exceeds, exclusive of costs, $100. In other words, that if the debt or judgment does exceed $100, the attachment can issue, and can affect wages as any other credits, leaving, however, $100 exempted.

The Court in *Wilson vs. State,* 21 *Md.,* 1, in constru-
ing an Act of Assembly, says, *" the words of the Act are
first to be resorted to, and if these are plain in their import,
they ought to be followed."*

*Dwarris on Statutes,* 703, says: "When the Legislature
has used words of a plain and definite import, it would
be very dangerous to put upon them a construction which
would amount to holding that the Legislature did not
mean what it has expressed."

In the case of *Maxwell vs. State,* 40 *Md.,* 292, the learned
Chief Justice, in speaking of the Assessment Law, says:
"There has evidently been some mistake or omission, and
we are asked to correct the mistake or supply what has
been omitted, in order to make the Act express what we
suppose to have been the intention of the Legislature, we
certainly have no power or authority to do so." The
Court, adopting the language of TENTERDEN, C. J., say
in effect, that it would be better to defeat the object of an
Act, than to put upon it a construction not warranted by
its words, in order to give effect to that which may be
supposed to have been the intention of the Legislature.

It is not the province of the Court to make laws, or to
supply omissions, but to interpret them as made by the
law-making power. *Maxwell, et al. vs. State, &c.,* 40
*Md.,* 273; *Scaggs vs. Balt. and Wash. R. R. Co.,* 10 *Md.,*
268; *Wilson & Phillips vs. State, &c.,* 21 *Md.,* 1; *Clark vs.
Mayor & C. C. of Balt.,* 29 *Md.,* 277; *Alexander vs.
Worthington, et al.,* 5 *Md.,* 471; *Hawbecker, et al. vs. Haw-
becker, et al.,* 43 *Md.,* 516; *Annan vs. Houck,* 4 *Gill,* 332.

It is contended that the law repealed can be resorted to
in aid of the interpretation of the new law. This is
admitted, if there is any ambiguity, or if the language
of the new law is susceptible of different interpretations.
Aside from the plain words of the Act under discussion,
it cannot be maintained that the intention of the Legisla-
ture was only to increase the exemption from *ten* to *one*

*hundred* dollars, and leave the law as it was in other repects. If such was the intention, the language used was most unfortunate. That purpose could have been accomplished simply and most effectually, by substituting the words "*one hundred*" in the place of the word "*ten*," and by adding the proviso, that it should not apply to any existing contracts or debts. This not being done, is evidence that this was not the intention of the Legislature.

The history of the Act of 1874, chap. 45, and the causes which lead to its enactment, are known; whilst it was supposed to be for the benefit of the laborer, it was passed at the instance of corporations and employers. They, and not the employed, demanded it. They were continually annoyed by the serving of small attachments issued by justices of the peace. It had become not only annoying, but vexatious. To stop these attachments was the chief purpose of the law. Attachments issuing out of the Circuit Courts were not so objectionable, for the reason that the corporations, such as railroads, had their attorneys in every county, where they would transact business, who, without inconvenience, could answer said attachments.

Courts have decided, from considerations of public convenience, and that the successful operations of government might not be hindered or delayed, that salaries of public officers shall not be attached. (8 *Md.*, 95.) "*And the same principles enlarged*," have induced the Legislature to so change and modify the law, that the operation and business of private corporations and individuals, might not be too much interfered with; hence, the Act of 1874, chap. 45, which practically abolishes the issuing of attachments by justices of the peace. *Keyser vs. Rice*, 47 *Md.*, 213; *Mayor and C. C. of Balt. vs. Root*, 8 *Md.*, 95.

While the primary object of the law was to benefit the employers, and especially corporations, yet the Legislature did not seem to be unmindful of the laborer. He

receives an exemption of $100. The man of small earnings and of small debts is protected, but not he who receives a large salary.

MILLER, J., delivered the opinion of the Court.

It appears from the records in these cases that Susan Weckler, on the 10th of March, 1876, recovered a judgment in the Circuit Court for Washington County, against John D. Newcomer for $973.66 with interest and costs, and on that judgment she caused to be issued out of the same Court an attachment by way of execution. The attachment was issued on the 30th of June, 1876, and Newcomer being in the employ of the First National Bank of Hagerstown at a salary of $1000 per annum, the writ was on the same day laid in the hands of the bank for the purpose of reaching this salary. The garnishee appeared and pleaded first that there was no such judgment as the writ of attachment sets out. The plaintiff then moved for leave to amend the writ by striking out the word "March" and inserting "February." From this we understand, that the writ as issued had erroneously recited, that the judgment had been recovered at a Court begun and held on the second Monday of *March* instead of the second Monday of *February*. The Court treated this as a mere clerical error, granted the leave to amend and the error was corrected. The writ having been issued out of the same Court in which the judgment was recovered and remained of record, this error of date in the recital of the writ was manifestly a mere clerical error, and was apparent on the records of the Court. In such case it was not only competent to, but the duty of the Court to order the amendment to be made. The decision in *McCoy, Garn. of Dewey vs. Boyle*, 10 *Md.*, 391, is directly in point, and that case is not in conflict with anything decided in *Halley, Exc'r of Kulp vs. Jackson, et al.*, 48 *Md.*, 254. After this it appears from the docket entries that

the plea of *nul tiel record* was renewed, and that on this plea the Court gave judgment for the plaintiff. To the judgment of the Court on this plea, whether it was given before or after the writ was amended, no exception was taken by the defendant. The result of this is that the Court's action on this plea is not before us for review, for it is well settled that if a party intends to have the decision of the Court below on a plea of *nul tiel record* reviewed in this Court, he must tender a bill of exceptions setting forth the record offered in evidence under the plea, the ruling of the Court with respect to it, and the exception thereto. *McKnew vs. Duvall,* 45 *Md.,* 506.

The garnishee then moved to quash the attachment upon the ground that the writ, as appears by the return of the sheriff, had not been made known to Newcomer, the defendant in the judgment. If this objection was founded upon the case of *Johnson vs. Lemmon,* 37 *Md.,* 336, where it was held that the writ was defective because it did not contain a clause of *scire facias* as to the defendant in the judgment, the answer is that in that case the attachment was issued more than three years after the date of the judgment, and it is only in such cases that a clause of this character and notice to the defendant in the judgment is required by the Act of 1862, ch. 262. That such a clause is not necessary where an attachment by way of execution is issued within three years from the date of the judgment was expressly decided in *Anderson vs. Graff,* 41 *Md.,* 606. Whether since the Act of 1874, ch. 320, it is necessary to insert such a clause in any case where the attachment is issued within twelve years from the date of the judgment, may be a matter of doubt, and is a question we do not propose now to decide. We are not aware of any statutory provision or of any decision which requires such a clause in the writ, or such notice to be given to the defendant in the judgment, in a case like the present, where the attachment was issued within three years from the date of

the judgment, and the motion to quash was properly over-ruled.

The attempt has been made to bring up the questions which we have thus considered and decided, by a separate appeal and a separate record, (which is No. 7 on the General Docket) but as no bill of exceptions was taken to the decision of the Court upon the plea of *nul tiel record*, and as it is clear that no appeal lies from a judgment refusing to quash an attachment, (*Baldwin vs. Wright & Kent*, 3 *Gill*, 341; *Mitchell vs. Chesnut, et al.*, 31 *Md.*, 521,) it is plain that this appeal must be dismissed, and it is so ordered.

*Appeal dismissed.*

(Decided 19th June, 1879.)

In the next record it appears that the case was tried before a jury upon issue joined on the plea of *nulla bona.* The proof shows that on the 30th of June, 1876, when the attachment was laid, nothing was due to Newcomer by the bank on account of his salary, but between that time and the day of trial, the 18th of May, 1878, over $1800 would have been due to him if the bank had not paid his salary monthly; that in consequence of this monthly payment there was from the laying of the attachment to the day of trial not more than $83.33⅓, due to him at any one time. Upon this proof prayers were offered on both sides. Those on the part of the plaintiff assert the proposition, that as the judgment on which the attachment issued exceeded the sum of $100, all the money which became due and payable by the bank to Newcomer on account of his salary from the time the attachment was laid to the day of trial, (less the sum of $100, which is by law exempted,) was liable to and affected by the attachment, and the fact that his salary since the laying of the attachment has been paid him by

the bank, is no bar to a recovery. Those of the garnishee, assert that the attachment affects only such wages or salary in excess of $100, as were actually due him at the time it was laid. The two Judges before whom the case was tried being divided in opinion, the prayers on both sides were rejected and each party took an exception. The verdict was in favor of the plaintiff, but for a sum which evidently did not include any part of the salary, and both parties. have appealed.

The question thus presented is of importance, and involves the construction and effect of the Act of 1874, ch. 45. It had long been the settled construction of our attachment laws, that the attachment fastened upon and subjected to condemnation not only all the credits or property of the debtor in the hands of the garnishee at the time it was laid, but, also, all such credits or property as might afterwards come to his hands down to the time of trial. All wages or hire of laborers or employés in the hands of their employers were like all other credits, unquestionably within the operation of these laws and this construction of them. This was supposed by the Legislature, to operate harshly upon such debtor parties, and by the Act of 1852, ch. 340, entitled "An Act to limit attachment cases where laid in the hands of employers," and afterwards by the amendatory Act of 1854, ch. 23, both of which are embodied in sec. 36, Art. 10, of the Code, it was provided that "no attachment of the wages, or hire, of any laborer or employé, in the hands of the employers, whether private individuals or bodies corporate, shall affect any salary or wages of the debtor *which are not actually due at the date of the attachment*, and the sum of ten dollars of such wages or salary which *may be due* shall be exempted from attachment, whether on warrant or on judgment." Without doubt, this legislation was in the interest and for the benefit of laborers and other employés. It prevented the operation of an attach-

ment upon all wages that might become due after it was laid and before trial, and granted an absolute exemption to the extent of ten dollars of the wages, or hire, due at the time it was laid. So stood the law until the passage of the Act of 1874, ch. 45. By that Act, sec. 36, Art. 10, of the Code was amended and re-enacted so as to make it read that "No attachments upon warrant, judgment upon two *non ests,* or upon original process, shall issue against, be levied on, or affect the wages or hire of any laborer or employé not actually due at the date of such attachment, in the hands of the employers, whether such employers be individuals or corporations, *unless the debt or judgment upon which such attachment is issued, shall, exclusive of costs, exceed the sum of one hundred dollars ;* and the sum of one hundred dollars of such wages, or hire, due to any laborer or employé by any employer or corporation *shall always* be exempt from attachment by any process whatever." Now, when we read this law in connection with the section of the Code which it amends, the changes made are, in our opinion, these: 1st. It plainly increases the amount absolutely exempted from ten to one hundred dollars. This certainly was intended to benefit the laborers or employés. 2nd. It prohibits the issuing, as well as the levying, of an attachment to affect wages which may become due after its date, where the debt, or judgment, on which it is founded does not exceed one hundred dollars. The effect of this, in connection with the increase of the absolute exemption, is to relieve employers from the annoyance and inconvenience of having attachments on small debts and magistrates' judgments laid in their hands, to affect the future wages of their employés. The practical result is that railroad corporations, who have a large number of persons in their employ, are, in a great measure, relieved from the trouble of all *such attachments,* because, in a large majority of cases, the wages of any one of their employés are at no time, in arrear to the amount of

one hundred dollars, and to give such corporations this relief is, probably, one of the objects the Legislature had in view in passing this Act. 3rd. But, if the debt, or judgment, exclusive of costs, on which an attachment is issued exceeds the sum of one hundred dollars, then the effect of the attachment to bind wages accruing due after its date, and down to the time of trial, is restored to what it was previous to any legislation on this subject, with the exception, that the amount of one hundred dollars of *such wages* is to be exempted from such effect. We are unable to give any other construction to the language of this law. The section of the Code had *limited in all cases*, the effect of an attachment against wages to the amount due at its date, and by the amendatory Act, the Legislature have said the same limitation shall continue "*unless* the debt, or judgment, on which such attachment is issued shall, exclusive of costs, exceed the sum of one. hundred dollars." It seems to us, that this purpose is plainly expressed. If the intent was to continue the limitation in all cases, as it had previously existed, the language just quoted was entirely unnecessary and has no meaning. Being in the law, the Courts must give to it its ordinary, natural and necessary import and meaning in the connection in which it is used. What we understand the Legislature to have declared by this Act is, that if an employé contracts a debt exceeeding one hundred dollars, or has a judgment recovered against him for more than that sum, exclusive of costs, his creditor may issue an attachment upon it, and that attachment may be laid in the hands of his employer, and if his wages, or salary, due at the time, or that may accrue due before the trial, are in excess of one hundred dollars, then *such excess* shall be affected by the attachment and shall be liable to condemnation. That being, in our judgment, the true construction and effect of this statute, it is hardly necessary to add that if an employer, as garnishee, disregards *such* an attachment, and after it

is laid in his hands and before trial pays over the accruing wages, or salary, in excess of one hundred dollars to the employé, he does so at his peril.

Applying this construction to the case before us, it follows there was error in the rejection of the plaintiff's first and second prayers, and for this error the judgment must be reversed and a new trial awarded. In the rejection of the opposing proposition contained in the prayers of the garnishee there was of course no error. We have not considered the third prayer of the plaintiff, in reference to money alleged to be due by the bank to Newcomer, on account of commissions on the sale of the bonds to the plaintiff, because it was not relied upon by her counsel, and in the further progress of the cause it will evidently become unimportant. Another exception was taken by the garnishee in which we find no error. The plaintiff after offering in evidence the writ of attachment offered the record of the judgment on which it was issued. This latter shows that the verdict was rendered at November Term, 1875, and that a motion for a new trial was immediately made before the judgment was entered on the verdict. This motion was not disposed of until the following February term, when it was overruled and judgment on the verdict was then rendered. The writ of attachment recites that the judgment was recovered at the February Term, and this of course was correct, because no judgment could properly have been rendered until the motion for a new trial had been disposed of. There was consequently no variance between the writ of attachment and the judgment, and no error in admitting the record of the judgment in evidence.

*Judgment reversed, and*
*new trial awarded.*

(Decided 19th June, 1879.)